**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOSEPH JINGOLI & SON, INC.<br><br>       Plaintiff,<br>  vs.<br><br>TRUCKING EMPLOYEES OF NORTH JERSEY WELFARE FUND, INC. – PENSION FUND,<br><br>      Defendant. | Civil Action No.:<br><br>**COMPLAINT** |

Plaintiff, Joseph Jingoli & Son, Inc., by and through its attorneys, O'Toole Scrivo Fernandez Weiner Van Lieu, LLC, as and for its Complaint against Defendant, Trucking Employees of North Jersey Welfare Fund, Inc. – Pension Fund, alleges as follows:

**<u>THE PARTIES</u>**

1.    Joseph Jingoli & Son, Inc. ("Jingoli") is a New Jersey corporation engaged in the building and construction industry, and maintains its principal place of business at 100 Lenox Drive, Suite 100, Lawrenceville, New Jersey 08648.

2.    Upon information and belief, Trucking Employees of North Jersey Welfare Fund, Inc. - Pension Fund (the "Fund") is a multi-employer pension plan within the meaning of the Employee Retirement Income Security Act of 1973 ("ERISA"), as amended by the Multi-Employer Pension Plan Amendments Act of 1980 ("MPPAA"), and maintains its principal place of business at 707 Summit Avenue, Union City, New Jersey 07087.

**JURISDICTION AND VENUE**

3.     Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 in that the federal claims stated herein arise under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; and/or sections 502(e)(1) and 4301(a)(1) of ERISA, 29 U.S.C. § 1132(e)(1) and §1451(a)(1).

4.     Jurisdiction to enter declaratory relief is conferred upon this Court pursuant to 28 U.S.C. § 2201.

5.     Venue is proper in this District pursuant to 28 USC §1391 and section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the Fund's principal place of business is in this District, and a substantial part of the events giving rise to the claims stated herein occurred in this District.

**FACTS COMMON TO ALL CAUSES OF ACTION**

**A.     The Fund's Notice of Withdrawal Liability and Jingoli's Initial Response Thereto**

6.     By letter dated July 20, 2017, the Funds notified Jingoli of its alleged withdrawal liability under the MPPAA ("Notice of Withdrawal Liability").

7.     According to the Notice of Withdrawal Liability, as of August 31, 2013, Jingoli ceased to have an obligation to contribute to the Fund or, in the alternative, permanently ceased all covered

operations resulting in Jingoli no longer being a contributing employer to the Fund.

8.   The Notice of Withdrawal Liability identifies Jingoli's withdrawal liability to be $816,882, payable in equal monthly payments of $3,049.34, over 240 months.

9.   By letter dated September 28, 2017 ("Jingoli's Request for Review"), Jingoli, through counsel, responded to the Notice of Withdrawal Liability by, among other things: (i) denying that it has any withdrawal liability; (ii) disputing its status as an employer subject to the MPPAA; (iii) demanding certain information and documents; and (iv) requesting a review of the Fund's determination.

10.   The Fund responded to Jingoli's Request for Review by letter dated October 20, 2017 (the "Fund's Decision"), wherein the Fund provided certain documents related to the Notice of Withdrawal Liability, but failed to identify the contractual basis for Jingoli's alleged withdrawal liability.

**B.   Jingoli Is Not A Party To Any Collective Bargaining or Multi-Employer Plan Agreements That Require It To Contribute To A Multi-Employer Plan Maintained by the Fund**

11.   Jingoli is not a party to any collective bargaining agreement that requires it to contribute to any multi-employer plan maintained by the Fund.

12. Jingoli is not a party to any multi-employer plan agreement that requires it to contribute to any multi-employer plan maintained by the Fund.

**C.  Jingoli's Performance of Work on Projects Subject To Project Labor Agreements**

13. Jingoli performed construction work on two construction projects subject to Project Labor Agreements (the "PLAs") executed by, among others, Teamsters Local 560 ("Local 560").

14. The construction projects subject to the PLAs were: (i) the Montclair State University Central Energy Center and Energy Distribution System project (the "Montclair Project"); and (ii) the Meadowlands Xanadu project (the "Xanadu Project").

15. Prior to executing the PLAs, Jingoli did not receive or review Local 560's collective bargaining agreement(s) and/or any multi-employer plans that require contribution to a multi-employer plan maintained by the Fund.

**(i)  The Xanadu Project**

16. The PLA for the Xanadu Project (the "Xanadu PLA") is dated May 18, 2004.

17. Article 2, section 3 of the Xanadu PLA provides, in relevant part:

> Owner shall have the right to select any
> qualified Contractor or Subcontractor for the
> award of contracts or subcontracts on the
> Project, provided however, that such
> Contractor or Subcontractor of whatever tier
> will execute a Letter of Assent . . . and

4

> comply with the terms of this Agreement and
> become bound by the local collective
> bargaining agreements attached hereto as
> Exhibit A. . . . The Collective Bargaining
> Agreements ("CBA") in effect between the
> Unions executing this Agreement and
> Contractors or their Subcontractors executing
> the Letter of Assent **are applicable to the
> Construction Work on the Project Site** as
> defined and delineated in Exhibit "B", **except
> where the provisions of this Agreement may
> modify such CBA's**.

[(Emphasis added).]

18. Article 3, section 1, of the Xanadu PLA limits its application to "Construction Work performed on the property."

19. Construction work is defined as the "labor customarily performed by the specific crafts in unions affiliated with the Bergen County Building & Construction Trades Council and as specified in the applicable collective bargaining agreements attached in Exhibit A."

20. Article 2, section 4 of the Xanadu PLA provides that, "where a subject covered by the provisions, explicit or implicit, of this Agreement is also covered by an Exhibit 'A', the provisions of this Agreement shall prevail."

21. Article 11, section 2 of the Xanadu PLA provides, in relevant part:

> The Contractor agrees to be bound by the
> written terms of the legally established Trust
> Agreements specifying the detailed basis on
> which payments are to be paid into, and
> benefits paid out of, such Trust Funds **but
> only with regard to work done on this Project**

> and only for those employees to whom this
> Agreement requires such benefits payments.

[(Emphasis added).]

22.  Upon information and belief, Local 560 is an affiliated member of the Bergen County Building & Construction Trades Council.

23.  The Xanadu PLA applies only to employees in the building and construction industry who perform construction work on the Xanadu Project.

24.  In accordance with and subject to the Xanadu PLA, Jingoli employed members of Local 560 solely to perform construction work on the construction site of the Xanadu Project.

25.  Jingoli paid all amounts due the members of Local 560 who performed construction work on the Xanadu Project on behalf of Jingoli in accordance with the Xanadu PLA.

26.  Jingoli completed all work in connection with the Xanadu Project and the Xanadu PLA is expired.

### (ii)  The Montclair Project

27.  The PLA for the Montclair Project (the "Montclair PLA") is dated April 20, 2012.

28.  Article 2, Section 3 of the Montclair PLA provides, in relevant part:

> Owner shall have the right to select any
> qualified Contractor or Subcontractor for the
> award of contracts or subcontracts on the
> Project, provided however, that such
> Contractor or Subcontractor of whatever tier
> will execute a Letter of Assent . . . and

> comply with the terms of this Agreement and become bound by the local collective bargaining agreements attached hereto as Exhibit A. . . . The Collective Bargaining Agreements ("CBA") in effect between the Unions executing this Agreement and Contractors or their Subcontractors executing the Letter of Assent **are applicable to the Construction Work on the Project Site** as defined and delineated in Exhibit "B", **except where the provisions of this Agreement may modify such CBA's**.

[(Emphasis added).]

29.   Article 3, section 1, of the Montclair PLA limits its application to "Construction Work performed on the property."

30.   Construction work is defined as the "labor customarily performed by the specific crafts in unions affiliated with the Passaic County Building & Construction Trades Council and as specified in the applicable collective bargaining agreements attached in Exhibit A."

31.   Article 2, section 4 of the Montclair PLA provides that, "where a subject covered by the provisions, explicit or implicit, of this Agreement is also covered by a Schedule 'A', the provisions of this Agreement shall prevail."

32.   Article 11, section 2 of the Montclair PLA provides, in relevant part:

> The Contractor agrees to be bound by the written terms of the legally established Trust Agreements specifying the detailed basis on which payments are to be paid into, and benefits paid out of, such Trust Funds **but only with regard to work done on this Project**

7

and only for those employees to whom this
Agreement requires such benefits payments.

[(Emphasis added).]

33.  The Montclair PLA applies only to employees in the
building and construction industry who perform construction work
on the Montclair Project.

34.  In accordance with and subject to the Montclair PLA,
Jingoli employed members of Local 560 solely to perform
construction work on the construction site of the Montclair
Project.

35.  Jingoli paid all amounts due the members of Local 560
who performed construction work on the Montclair Project on behalf
of Jingoli in accordance with the Montclair PLA.

36.  Jingoli completed all work in connection with the
Montclair Project and the Montclair PLA is expired.

37.  The last year that Jingoli employed any member of Local
560 was 2013.

38.  All conditions to asserting the claims contained herein
have been satisfied.

## FIRST COUNT
### (Declaratory Judgment)

39.  Jingoli repeats and re-avers each and every one of the
allegations set forth in the preceding paragraphs of this Complaint
with the same force and effect as if each were fully set forth at
length herein.

40.  This Court, pursuant to 28 U.S.C. § 2201, in "a case of actual controversy," is permitted to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

41.  All declaration issued by this Court, pursuant to 28 U.S.C. § 2201, shall have the force and effect of a final judgment or decree.

42.  An actionable, legal controversy exists between Jingoli and the Fund that requires a declaration of their respective rights, obligations and legal relationship under the MPPAA.

43.  Section 515 of ERISA, 29 U.S.C. § 1145, requires an employer to contribute to a multiemployer pension fund pursuant to the provisions of an applicable collective bargaining agreement or multiemployer plan.

44.  Jingoli is not an employer under the MPPAA and/or for withdrawal liability purposes.

45.  Jingoli is not a party to a collective bargaining or multi-employer plan agreement that requires it to contribute to any multi-employer plan maintained by the Fund.

46.  The incorporation of Local 560's collective bargaining agreement and the Fund's multi-employer plan agreement to the PLAs were expressly limited.

47.  Jingoli's contribution obligations to the members of Local 560 who were employed by Jingoli to perform construction

9

work on the Xanadu and Montclair Projects were limited, pursuant to the express terms of the PLAs, to pay the appropriate dollar value assigned for each hour a specific employee performed work on the projects.

48. All parties agreed that Jingoli would have no contribution obligation following the completion of the Xanadu and Montclair Projects.

49. Notwithstanding that Jingoli is not an employer subject to withdrawal liability, the Fund has assessed Jingoli with withdrawal liability in the amount of $816,882, and demanded monthly payment therefor in the amount of $3,049.34, for a period of 240 months.

50. An actual, justiciable controversy exists between the parties which the Court can resolve with finality by declaring the rights, obligations and legal relationship between the parties.

51. Jingoli does not waive all other rights, remedies and defenses to the Fund's claim for withdrawal liability that is subject to arbitration pursuant to 29 U.S.C. § 1401, which rights, remedies and defenses are expressly preserved.

**WHEREFORE**, Jingoli demands judgment against the Fund declaring that Jingoli is not an employer under the MPPAA and/or for withdrawal liability purposes pursuant to that statute, together with cost of suit, attorneys' fees and such other relief

in favor of Jingoli and against the Fund as this Court deems just and proper.

> **O'TOOLE SCRIVO**
> **FERNANDEZ WEINER VAN LIEU, LLC**
> *Attorneys for Plaintiff,*
> *Joseph Jingoli & Son, Inc.*
>
> **__/s/ Greg Trif_____**
> Greg Trif
> 14 Village Park Road
> Cedar Grove, New Jersey 07009
> (973) 239-5700
>
>
> Dated:  November 22, 2017